OPINION *Page 2 
{¶ 1} Appellant, Antwan Rhines, appeals his conviction and sentence for one count of obstruction of official business. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} On March 9, 2007, appellant was indicted by the Fairfield County Grand Jury on one count of assaulting a corrections officer in violation of R.C. 2901.13(A) and 2901.13 (C)(2)(a) and one count of obstruction of official business in violation of R.C. 2921.31, which included creating a risk of physical harm to corrections officers, a fifth degree felony.
 {¶ 3} On August 28, 2007, the matter proceeded to jury trial. The evidence established that at the time of the alleged offenses, appellant was an inmate at Southeastern Correctional Institution. Corrections Officers Sarah Congrove and Eraclio Sauceda were responsible for the area where appellant was traveling.
 {¶ 4} Officer Congrove testified that her duties included preventing loitering in the area. She stated she advised a group of inmates who were standing at the corner of "F-1" that they had to leave the area. She stated they eventually began moving into an unauthorized area at which point she ordered the inmates to stop. She stated the appellant said, "Do not fucking listen to her, you don't have to listen to her . . . Fuck that bitch." T.194. She stated the appellant kept walking and she repeated the direct order to stop. She stated appellant stopped, looked at her and said, "fuck you bitch." She stated as a result of appellant's failure to act in accordance with her instructions she ordered appellant to turn around and place his hands behind his back. She stated appellant turned around and, as she attempted to place a handcuff on his right arm, he jerked *Page 3 
away, said, "fuck you bitch. You ain't running nothing. You ain't fuck'n cuffing me" and punched her in the shoulder. T.196. Congrove testified she radioed for assistance and other officers responded. She stated as Officer Eraclio Sauceda arrived, appellant grabbed the chain link fence and started "screaming, hollering and swearing."
 {¶ 5} Corrections Officer Eraclio Sauceda testified he responded to Congrove's request for assistance. He stated he ordered appellant to stop and place his hand behind his back. He stated appellant struggled. He stated because of the appellant's actions, appellant was forcefully subdued and handcuffed.
 {¶ 6} Captain William Smith stated that inmates have a set of rules and regulations that must be followed in the prison. He testified the rules state an inmate is not to physically resist a direct order and is subject to discipline for failure to comply. He stated he responded to Congrove's radio for assistance. He stated he, Officer Sauceda and Officer Powell gave appellant a direct order to stop fighting. He stated appellant did not follow the order and fought the entire time. He stated the officers had to push appellant against the fence and forcefully place appellant in handcuffs. He stated the incident created a danger to the physical safety of corrections officers and the other inmates.
 {¶ 7} After the presentation of evidence, appellant was convicted on one count of obstruction of official business and acquitted of assaulting a corrections officer. Appellant was sentenced to serve a nine month sentence and further ordered to pay the costs of the prosecution.
 {¶ 8} Appellant appeals the conviction for one count of obstruction of official business setting forth the following assignment of error: *Page 4 
 {¶ 9} "THE JUDGMENT OF CONVICTION IS BASED ON INSUFFICIENT EVIDENCE AND THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF [THE] EVIDENCE."
 {¶ 10} In this assignment of error, appellant argues the State failed to prove appellant violated a prison rule for which corrections officers were, in the course of their lawful duties, permitted to use force. As such, appellant argues the corrections officers were acting outside the course of their lawful duties and, therefore, appellant could not be found guilty of obstruction of official business. We disagree.
 {¶ 11} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. However, the appellate court must bear in mind, the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387, 678 N.E.2d 541.
 {¶ 12} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *Page 5 State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, superceded by constitutional amendment on other grounds in State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 13} The elements which must be proven by the State beyond a reasonable doubt for a conviction on the charge of obstruction of official business are as follows:
 {¶ 14} "(A) No person without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 15} Ohio Administrative Code Section 5120-9-06 permits correctional institutions to promulgate rules of conduct for inmates. Rule 21 of the Southeast Correctional Institution Inmate Handbook states that disobedience of a direct order given by a correction officer or employee is a violation of prison rules.
 {¶ 16} Ohio Administrative Code Section 5120-9-01(C)(3)[1] sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates who are in violation of prison rules stating:[2] *Page 6 
 {¶ 17} "(C) There are six general situations in which a staff member may legally use force against an inmate:
 {¶ 18} "(3) Controlling or subduing an inmate who refuses to obey prison rules and regulations * * *."
 {¶ 19} In this case, prison rule 21 prohibits inmates from disobeying the direct orders of corrections officers. Furthermore, the Ohio administrative code permits officers, in the scope of their official duty, to use reasonable force to subdue inmates in violation of prison rules. Officer Cosgrove testified the appellant refused to keep moving through prison section F-1 and then attempted to travel into an unauthorized area. She stated when she ordered him to stop, appellant refused. Appellant also disobeyed the direct orders of Officer Eraclio Sauceda and Captain William Smith, grabbed the fence, yelling and screaming, thereby, requiring the use of force to subdue appellant and control the situation.
 {¶ 20} In addition, there was testimony that the corrections officers are in the facility to provide security and supervise the inmates and that the inmates all get a rule book which sets forth the rules of behavior. We find this testimony proves beyond a reasonable doubt that the corrections officers were proceeding lawfully when they restrained the appellant for violating the rules.
 {¶ 21} For these reasons, we do not find that the trier of fact clearly lost its way and created a manifest miscarriage of justice by finding appellant guilty of obstructing official business. We further find that after viewing the evidence in a light most *Page 7 
favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 22} Accordingly, appellant's assignment of error is not well taken and is hereby overruled.
 {¶ 23} The judgment of the Fairfield County Court of Common Pleas is hereby affirmed.
 Edwards, J. Gwin, P.J. and Farmer, J. concur *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The current version of the OAC has this language in 5120-9-01 (C)(2)(c) not (C)(3), but both appellant and appellee refer to 5120-9-01(C)(3).
[2] Force is defined as "the exertion or application of a physical compulsion or constraint. OAC 5120-9-01(B)(1). *Page 1